# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

PAULA W.,

Plaintiff,

v.

8:18-CV-659
(MAD/ATB)

COMMISSIONER OF SOCIAL SECURITY[1],

Defendant.

---

VICTORIA M. ESPOSITO, ESQ., for Plaintiff
PETER W. JEWETT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT and RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

The procedural history of this case goes back almost a decade. On February 26, 2010, plaintiff protectively filed[2] an application for Disability Insurance Benefits

---

[1]On June 17, 2019, Andrew Saul was sworn in as the new Commissioner of Social Security. Noting that former acting Commissioner Nancy A. Berryhill is still named as the defendant in this matter, the Clerk of the Court is directed to change the docket to reflect Andrew Saul, Commissioner of Social Security, as the proper party.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed,

("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning October 25, 2008. (Administrative Transcript ("T.") at 173-87). Plaintiff's claim was denied initially on September 3, 2010, and she made a timely request for a hearing before an Administrative Law Judge ("ALJ"). (T. 123-26, 129). ALJ Bruce S. Fein conducted a hearing on June 28, 2011, at which plaintiff testified. (T. 53-114). In a decision dated November 14, 2011, ALJ Fein found that plaintiff was not disabled. (T. 28-45). The Appeals Council denied plaintiff's request for review on January 7, 2013. (T. 1-4). On March 13, 2013, plaintiff commenced an action challenging this decision in the Northern District of New York, Case No. 7:13-CV-295 (GLS/ESH). (T. 1256-68).

While her federal action was pending, plaintiff filed a new application for SSD and SSI benefits on January 15, 2013. (T. 1160). On June 7, 2013, plaintiff's latter claim was denied upon initial review, and at the request of the plaintiff a hearing was held before ALJ Jennifer Gale Smith on August 28, 2014. (T. 1160). On December 5, 2014, ALJ Smith found that plaintiff was not disabled. (*Id.*).

Meanwhile, on September 29, 2014, Judge Sharpe issued a Memorandum-Decision and Order, vacating ALJ Fein's decision, finding that the Appeals Council had failed to consider new and material evidence. (T. 1256-68). The case was remanded to the Appeals Council, at which time they vacated both ALJ Fein's November 2011 decision and ALJ Gale's December 2014 decision, consolidated the

---

the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

claims to avoid duplicity, and remanded the consolidated case to ALJ Fein for proceedings consistent with the Appeals Council's directives. (T. 1250-55).

ALJ Fein conducted a new hearing on February 3, 2017, at which he heard testimony from plaintiff and Vocational Expert ("V.E.") Esperanza DiStefano. (T. 1191-1217). ALJ Fein denied plaintiff's claim in a decision dated March 16, 2017 (T. 1160-80), which became the final decision of the Commissioner when the Appeals Council denied review on April 10, 2018. (T. 1150-53).

## II.  GENERALLY APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations. If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering vocational
> factors such as age, education, and work experience . . . . Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the claimant is unable to
> perform his past work, the [Commissioner] then determines whether there
> is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.*

*Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). It must be "more than a scintilla" of evidence scattered throughout the

administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

Plaintiff was 53 years old at the time of the February 3, 2017 hearing.  (T. 1205). She lived in public housing with her 14 year-old son.  (T. 1202).  Despite several attempts to obtain employment since 2009, plaintiff was told by prospective employers that her heart condition caused her to be a liability, preventing her from obtaining

employment.  (T. 1201).  Plaintiff is a high school graduate, and she attended St. Lawrence University for two years without completing a degree.  (*Id.*).

According to her testimony, plaintiff has been diagnosed with bipolar disorder, major depressive disorder, anxiety disorder, post-traumatic stress syndrome, coronary artery disease, an immune system disorder, back pain, emphysema, and COPD.  (T. 1197).  Every four weeks she received human plasma infusions which took approximately two to three hours to administer.  (*Id.*).  She was "sick all the time." (*Id.*).

Plaintiff further testified that she could walk "maybe" 100 yards before becoming out of breath and experiencing back pain.  (T. 1198).  She could stand for "about an hour," before needing to sit down.  (*Id.*).  Sitting in her recliner was comfortable, however she could only sit in a stool or hard chair for an hour and a half to two hours, before she needed to change positions.  (*Id.*).  The most she lifted was a gallon of milk; carrying it from her vehicle into her apartment.  (T. 1198-99).

Plaintiff's routine consisted of waking at 5:10 a.m. every morning.  (T. 1202). She did not shower often due to her depression.  (*Id.*).  Plaintiff cleaned the dishes about every three days.  (*Id.*).  Her son helped her bring the laundry to the laundromat because she could not lift the clothes.  (T. 1203).  She would shop early, approximately four to five times a week, to avoid "a lot of people;" however her neighbors usually came out to help her carry the groceries in from her vehicle.  (*Id.*).  Her neighbors also shoveled her driveway for her.  (*Id.*).

Plaintiff had a home healthcare advocate assigned to her through Medicaid, to

provide assistance and drive plaintiff long distances.[3]  (T. 1204).  Plaintiff had one friend with whom she socialized, and in her spare time she crocheted afghan blankets for veterans.  (T. 1205).

With respect to her mental condition, plaintiff testified that her depression made her tired all day; however her anxiety prevented her from sleeping.  (T. 1199).  She took numerous medications for depression, anxiety and post-traumatic stress syndrome, as well as mood stabilizers.  (*Id.*).  Plaintiff became upset "really easily," at which time she would swear a lot, her heart would race, and she could not catch her breath.  (*Id.*).  At times these symptoms conflated with those of her coronary artery disease.  (*Id.*).  Plaintiff suffered from a substance abuse condition "years" ago; however she testified that since becoming sober in 2011, her health did not improve, but had deteriorated.  (T. 1201).

The ALJ's decision provides a detailed statement of the medical and other evidence of record (T. 1167-78), and plaintiff's counsel has reviewed the facts extensively in his brief.  (Plaintiff's Brief ("Pl.'s Br.") at 1-26) (Dkt. No. 13).  Rather than recite this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ determined that plaintiff met the insured status requirements through June 30, 2011. (T. 1163).  The ALJ then determined that plaintiff

---

[3]Plaintiff admitted that she could drive to local destinations such as Walmart, but her back pain and anxiety prevented her from driving long distances.  (T. 1204).

had not engaged in substantial gainful activity since October 25, 2008. (T. 1163-64). At step two of the sequential evaluation, the ALJ found that plaintiff's coronary artery disease, status post cardiac catheterization with stent; cervical spondylosis; chronic obstructive pulmonary disease; depressive disorder, NOS; and personality disorder, NOS were severe impairments through her date last insured. (T. 1164). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.*).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform less than the full range of light work. (T. 1166). Specifically, the ALJ found that she could lift/carry 10 pounds frequently and 20 pounds occasionally. (*Id.*). He further found that she could sit for six hours out of an eight hour work-day with normal breaks, stand/walk for six hours out of an eight hour work-day with normal breaks, and engage in all postural activities occasionally. However, plaintiff could never climb ropes, ladders or scaffolds; she must avoid concentrated exposure to extreme cold, heat, and pulmonary irritants; and she could not work in poorly ventilated areas. (*Id.*). Mentally, the ALJ found that plaintiff could perform work limited to simple, routine and repetitive tasks performed in a low stress job (defined as one that only occasionally requires decision-making, change in the work setting or judgment) that only involved occasional social interaction with the public, supervisors, and co-workers. (*Id.*). In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be

8

accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929." (T. 1167). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927. (*Id.*).

The ALJ also found that plaintiff's description of her impairments and the resulting functional limitations were not fully credible in light of the record evidence. (T. 1174-75). The ALJ next determined that plaintiff was unable to perform her past relevant work. (T. 1178). Relying on the VE's testimony, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 1179). Accordingly, the ALJ determined that plaintiff was not disabled from October 25, 2008 through the date of his decision. (T. 1180).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

(1)    The ALJ erred in granting "no weight" to the opinion of Dr. Flos Piit.

(2)    The ALJ failed to properly weigh Dr. Logalbo's opinion of plaintiff's mental impairments.

(3)    The ALJ erred in granting excessive weight to the opinion of a non-examining, non-treating state agency assessor.

(4)    The ALJ committed an error of law in his step five analysis.

(Pl.'s Br. at 28-34). Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Defendant's Brief ("Def.'s Br.") at 8-13) (Dkt. No. 14). This court agrees with the plaintiff that the ALJ erred in

weighing the evidence and making his RFC determination with respect to plaintiff's mental health limitations, which was not supported by substantial evidence. As a result, the ALJ's step-five analysis, and the ultimate finding that plaintiff was not disabled, were tainted. Accordingly, the court recommends a remand for further administrative proceedings to properly weigh the evidence and assess plaintiff's RFC.

DISCUSSION

## VI. RFC EVALUATION/TREATING PHYSICIAN/WEIGHT OF THE EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d. Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

## 2. Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996). Under 20 C.F.R. §§ 404.1527(d) and 416.927(d), some issues

are not "medical issues," but are "administrative findings." The responsibility for determining these issues belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered. *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the

12

remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Id.* at 96. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B. Application

#### 1. Physical Limitations

Plaintiff argues that the ALJ erred by failing to grant any weight to the opinion of Dr. Flos Piit, plaintiff's primary care physician from November 2012 through at least December 2015. On July 16, 2013, Dr. Piit completed an RFC Evaluation form on behalf of plaintiff, in which she found that during an eight-hour work day, plaintiff could sit, stand, and/or walk for zero hours per day. (T. 2633). Dr. Piit further found that plaintiff could frequently lift or carry up to 10 pounds, and occasionally lift or carry up to 20 pounds. (*Id.*). Plaintiff could occasionally bend and climb, but never squat or crawl. (*Id.*). Approximately one year later on August 21, 2014, Dr. Piit provided another RFC Evaluation form on behalf of plaintiff. (T. 2631-32). The August 2014 assessment set forth the same limitations as the July 2013 assessment, with the exception that in August 2014, Dr. Piit opined that plaintiff should never

climb. (T. 2631).

The ALJ acknowledged Dr. Piit's assessments in his decision, and went over her findings as previously set forth. (T. 1176). The ALJ further provided a detailed explanation for why he afforded "no evidentiary weight" to Dr. Piit's opinion. First, the ALJ noted that Dr. Piit's records lacked any reference to such limitations observed at the various times of treatment, "suggesting that the limitations noted . . . were based on information provided by the claimant." (*Id.*). Second, the ALJ pointed out that Dr. Piit did not state the basis for the limitations provided in her assessments, particularly noting that the August 2014 assessment seemed to be copied from the July 2013 assessment (with the exception of the climbing limitation), with no explanation to account for the difference noted. (*Id.*). Last, the ALJ observed that plaintiff's testimony and other evidence of record reflected an ability to sit, stand, and walk greater than that opined by Dr. Piit. (*Id.*).

The treating physician rule provides that an ALJ must give controlling weight to a treating physician's opinion if that opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with other substantial evidence in the record. *See Halloran*, 362 F.3d at 32; 20 C.F.R. § 416.927(c)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*,

177 F.3d 128, 133 (2d Cir. 1999)(citation omitted).

Upon a review of the record, this court finds that the ALJ provided good reasons for rejecting the opinion of treating physician Dr. Piit. As defendant points out, the ALJ properly considered the necessary factors set forth in 20 C.F.R. §§ 404.1527©) and 416.927©) in assessing Dr. Piit's opinion, including treatment relationship, specialty, supportability, and consistency. (Def.'s Br. at 5-6). Moreover, Dr. Piit's physical examinations during the relevant period indicated mostly normal and unremarkable findings, and did not reflect any serious limitations to plaintiff's physical RFC. (T. 1902, 1912, 1927, 1930, 1938, 1951, 1959, 2175, 2289-90, 2306, 2356, 2393, 2401-02, 2411).

Moreover, the ALJ properly noted that Dr. Piit's restrictive opinion was directly contrary to plaintiff's own testimony and other evidence of record regarding her physical abilities. Plaintiff testified that she could stand for an hour to cook and clean dishes before she needed to sit down, and she could sit for up to two hours before needing to change positions. (T. 1198). Furthermore, the evidence reflects that during the relevant period, plaintiff was able to do household chores, care for her eight-year old son, go shopping, load shopping bags into her van, carry laundry outside, and hang it up to dry. (T. 99-101). Plaintiff further reported that as of July 2014, she was "more active" and going out for walks. (T. 2233).

In formulating plaintiff's physical RFC, the ALJ afforded the greatest weight to

15

the physical RFC evaluation prepared by treating physician Elizabeth M. LoGalbo, M.D. (T. 1175-76). Dr. LoGalbo was plaintiff's primary care physician from August 26, 2010 through June 27, 2011[4]. (T. 1064-79). Dr. LoGalbo prepared a June 21, 2011 RFC evaluation opining that, during an eight-hour work-day, plaintiff could sit for a total of eight hours, stand for a total of eight hours, walk for a total of eight hours, occasionally lift up to 20 pounds, frequently lift up to 10 pounds, and occasionally carry up to 10 pounds. (T. 1060). Dr. LoGalbo further opined that plaintiff could frequently bend, squat, crawl and climb, and had no limitations for grasping, pushing, pulling or fine manipulation bilaterally. (*Id.*). The ALJ noted that, unlike Dr. Piit's opinion, Dr. LoGalbo's assessment regarding physical limitations was supported by plaintiff's treatment notes and was consistent with the other evidence of record. Dr. LoGalbo's opinion provided sufficient support for the ALJ's physical RFC. *See Lewis v. Colvin,* 548 Fed. App'x 675, 677 (2d. Cir. 2013).

In light of the inconsistencies between Dr. Piit's opinion and her treatment notes, plaintiff's own testimony regarding her alleged limitations, and the findings of another treating physician, the ALJ was justified in according less than controlling weight to Dr. Piit's opinions. *See Clark v. Colvin*, No. 1:13-CV-01124, 2016 WL 4804088, at *4 (W.D.N.Y. Sept. 13, 2016) ("[The treating physician's] opinion was inconsistent with

---

[4]It appears plaintiff ceased treating with Dr. LoGalbo soon after her June 21, 2011 RFC evaluation.

the findings of his own treatment notes as well as with the findings of other treating and consulting sources. Therefore, the ALJ was within his discretion to decline to give controlling weight to [the] opinion.") (citing *Rivera v. Colvin*, No. 1:14-CV-00816, 2015 WL 6142860, at *4 (W.D.N.Y. Oct. 19, 2015) ("Because [the treating physician's] own treatment notes, as well as notes from other treating sources, contain substantial evidence of objective findings inconsistent with the limitations found by [the treating physician] in his . . . opinion, the ALJ was entitled to give that opinion less than controlling weight."); *Kirk v. Colvin*, No. 12-CV-6075, 2014 WL 2214138, at *7 (W.D.N.Y. May 28, 2014) ("Inconsistencies between [the treating physician's] treatment notes and final opinions constitute 'good reasons' for assigning her opinions non-controlling weight.")).

## 2. Mental Limitations

Plaintiff further contends that the ALJ erred in affording "little weight" to the assessment of plaintiff's mental functioning provided by Dr. LoGalbo on October 19, 2010. (T. 1177). Plaintiff argues that, as her primary care physician, Dr. LoGalbo's opinion should have been granted "controlling weight" under the treating physician rule, and that the ALJ erred in alternatively placing "significant weight" on the Mental Residual Functional Capacity Assessment of state agency medical expert T. Bruni. (Pl.'s Br. at 30-32).

Dr. LoGalbo prepared an October 19, 2010 evaluation of plaintiff's mental

functioning, opining that there was no evidence of limitations in interacting appropriately with others, maintaining socially appropriate behavior without exhibiting behavior extremes, and maintaining basic standards of personal hygiene and grooming; that plaintiff was moderately limited in understanding and remembering instructions, carrying out instructions, and making simple decisions; and that she was very limited in maintaining attention/concentration and in her ability to function in a work setting at a consistent pace. (T. 1063). In a June 27, 2011 memorandum submitted to the Agency, Dr. LoGalbo summarily concluded that "plaintiff is disabled due to her anxiety [and] depression[;]" and she also concluded that plaintiff had poor ability to meet quality, production, and attendance standards. (T. 1059-60). The ALJ, while acknowledging that Dr. LoGalbo was a treating physician whose opinion would normally be given controlling weight, found that Dr. LoGalbo's opinion regarding plaintiff's mental limitations was unsupported by her treatment notes, and appeared to be based on subjective complaints alone. (T. 1177). The ALJ pointed out that, in her capacity as a primary care physician, Dr. LoGalbo never performed a mental status examination of the plaintiff, "or even had the professional training to do so." (*Id.*). The ALJ further noted Dr. LoGalbo's finding that plaintiff was disabled was a determination reserved to the Commissioner, and therefore not controlling. (*Id.*).

 This court finds that the ALJ gave proper reasons for rejecting Dr. LoGalbo's

opinion[5] and considered the factors required by the treating physician rule in doing so. A review of Dr. LoGalbo's treatment notes reveals scant support for the mental limitations opined. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). Other than documenting plaintiff's subjective complaints, the mental status examinations contained in Dr. LoGalbo's records merely note that plaintiff lacked suicidal or homicidal ideations. (T. 1064-69). Dr. LoGalbo otherwise failed to set forth any explanation with respect to the limitations imposed, especially in finding that plaintiff was "very limited" in maintaining attention/concentration and functioning in a work setting at a consistent pace. (T. 1063). *See Johnson v. Comm'r of Soc. Sec.*, 669 F. App'x 580, 581 (2d Cir. 2016) (ALJ's decision to give less than controlling weight to medical opinion evidence was proper, where the opinions were not supported by the medical evidence, were at times internally inconsistent, and relied primarily on the plaintiff's self-reported symptoms). Rather, Dr. LoGalbo's opinions were offered on a check-box form. *See Goodale v. Astrue*, 32 F. Supp. 3d 345, 358 (N.D.N.Y. 2012) (ALJ did not err by giving little weight to treating physician's opinion that used a

---

[5]Nor was it error for the ALJ to attribute controlling weight to Dr. LoGalbo's opinion regarding plaintiff's *physical* limitations, while rejecting Dr. LoGalbo's opinion regarding plaintiff's *mental* limitations. "The ALJ may, in reconciling conflicting evidence, reject portions of a medical opinion and accept other portions of that same opinion." *Bleil v. Colvin*, No. 3:15-CV-1492 (LEK/ATB), 2017 WL 1214499, at *6 (N.D.N.Y. Mar. 31, 2017) (quoting *Marrese v. Colvin*, No. 15-CV-6369, 2016 WL 5081481, at *3 (W.D.N.Y. Sept. 16, 2016)); see also *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

19

"check box" form provided by counsel). Furthermore, Dr. LoGalbo was a primary care physician and, as far as the record reflects, lacked any specialty in psychology or psychiatry. *See* 20. C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

The court, however, finds that substantial evidence does not support the ALJ's findings regarding the weight given to the remaining opinions of record from the various mental health experts. T. Bruni, a state agency psychologist, prepared a Mental RFC Assessment of plaintiff on September 2, 2010 in conjunction with plaintiff's initial application for SSI/DIB. (T. 589-92). Dr. Bruni did not have an opportunity to examine plaintiff, but based his evaluation on the medical evidence of record, including a June 15, 2010 psychological evaluation of plaintiff prepared by Richard W. Williams, Ph.D. (T. 535-36, 589-92). Based on his review of the record evidence, Dr. Bruni opined that, with regard to plaintiff's adaptation, she was not significantly limited, and with regard to plaintiff's understanding and memory, sustained concentration and persistence, and social interaction, plaintiff was either not significantly limited or only moderately limited. (T. 589-92). In support of the "significant weight" he afforded to Dr. Bruni's opinion, the ALJ noted that it was "consistent with the longitudinal record of [plaintiff's] treatment." (T. 1176-77).

With regard to non-examining physicians' opinions, "[t]he general rule is that 'the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of

20

what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Soto-Rivera v. Comm'r of Soc. Sec.,* No. 17-CV-6675, 2019 WL 2718236, at *3 (W.D.N.Y. June 28, 2019) (quoting *Vargas v. Sullivan*, 898 F.2d 293, 295–96 (2d Cir. 1990)); *Filocomo v. Chater*, 944 F. Supp. 165, 169 (E.D.N.Y. 1996) ("The conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight.").

Notwithstanding the general rule, the opinion of a non-examining source may be credited over that of an examining physician under the proper circumstances. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record) (internal citation omitted); *Dronckowski v. Comm'r of Soc .Sec.,* No. 1:18-CV-27, 2019 WL 1428038, at *5 (W.D.N.Y. Mar. 29, 2019) (citing *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 336-37 (W.D.N.Y. 2018)). However, the regulations caution that "because non-examining sources have no examining or treating relationship with [a claimant], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." *D'augustino v. Colvin,* No. 15-CV-6083, 2016 WL 5081321, at *2 (W.D.N.Y. Sep. 16, 2016) (citing 20 C.F.R. § 404.1527(c)(3)). It is incorrect for an ALJ to place significant weight on the findings of a non-examining source that differ from other medical evidence of record without

adequate explanation. *Id.* (citing *Frederick v. Barnhart*, 317 F. Supp. 2d 286, 298-99 (W.D.N.Y. 2004) (finding error where the ALJ relied primarily on the opinion of the non-examining, non-treating review physicians)). Even where a non-examining opinion is afforded weight, it alone cannot be considered substantial evidence. *See Ellet v. Comm'r of Soc. Sec.*, No. 1:06-CV-1079 (FJS), 2011 WL 1204921, at *9 (N.D.N.Y. Mar. 29, 2011) ("Although the Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence, these opinions may constitute substantial evidence where they are in turn supported by substantial evidence in the record.")(internal citations omitted)).

Here, the ALJ's explanation for giving the greatest weight to the opinion of non-examining expert Dr. Bruni is deficient. The ALJ merely cited to the "longitudinal record" of treatment as support for the evidentiary weight afforded to Dr. Bruni's opinion, without identifying any evidence supporting Dr. Bruni's findings.[6] Admittedly, the law dictates that a lack of explanation in such circumstances may not constitute error, where the reviewing court can determine the underlying rationale for the ALJ's decision. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78 (N.D.N.Y. 2005) ("Where 'the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered

---

[6]The court notes that Dr. Bruni's opinion was also in checkbox form, with a brief summary of conclusions provided. (T. 590-91).

particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). However, the ALJ's error in failing to adequately support and/or explain the weight afforded to Dr. Bruni's assessment is compounded by the ALJ's evaluation of the opinion of plaintiff's treating psychiatrist, Mariam H. Asar, M.D.

In *Estrella v. Berryhill*, the court emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Estrella v. Berryhill*, 925 F.3d at 97-98 (the opinion of a one-time consultative psychologist ". . . does not provide a good reason for diminishing [the treating psychiatrist's] opinion.). Here, in making the RFC determination the ALJ afforded "evidentiary weight"[7] to the opinion of treating physician Dr. Asar, who opined that plaintiff had mild limitations for understanding and remembering simple instructions and carrying out simple instructions; moderate limitations for making judgments on simple and complex

---

[7]Further complicating the court's meaningful review of the RFC determination is the manner in which the ALJ afforded weight to Dr. Asar's opinion. Despite Dr. Asar's role as plaintiff's treating psychiatrist, the ALJ merely indicated that Dr. Asar's opinion was given "evidentiary weight," without clarifying if this was controlling weight, or less than controlling weight. The failure of the ALJ to provide "good reasons" for not giving a treating physician's opinion controlling weight, to mention the weight the opinions were given, and to apply the factors set forth in the regulations are sufficient grounds for remand. *See Halloran*, 362 F.3d at 33; *see also Pierre v. Astrue*, No. 09-CV-1864, 2010 WL 92921, at *9 (E.D.N.Y. Jan. 6, 2010) (concluding that the ALJ did not provide good reasons for not giving treating physicians' opinions controlling weight and "failed even to mention the weight these opinions were given (except to say it was not 'great')"). Here, in stating that his RFC "reflected" Dr. Asar's findings, the ALJ seems to imply that the evidentiary weight afforded was more significant than not. However, even assuming Dr. Asar's opinion was given controlling weight, it does not rectify the ultimate error, as further set forth in this opinion.

work-related decisions and interacting appropriately with the public; moderate to marked limitations for understanding and remembering complex instructions; and marked limitations for carrying out complex instructions, interacting appropriately with supervisors and coworkers, and responding appropriately to usual work situations and to changes in a routine work setting. (T. 1178, 2599-2600). The ALJ noted that Dr. Asar's counseling notes covered a lengthy period and were very detailed. (T. 1178). Moreover, the ALJ explicitly stated that the mental limitations incorporated in the RFC reflected Dr. Asar's findings. (*Id.*).

Plaintiff argues, however, that in reality the ALJ ignored the portions of Dr. Asar's opinion that would lead to the conclusion that plaintiff could not sustain employment in the national economy. (Pl.'s Br. at 33-34). This court agrees, especially because the more restrictive mental limitations found by Dr. Asar do not, in fact, appear to be accounted for in the ALJ's RFC determination.

For example, Dr. Asar opined that plaintiff had marked limitations in the ability to interact appropriately with supervisors and coworkers, as well as marked limitations in the ability to respond appropriately to usual work situations and changes in a routine work setting. (T. 2600). Significantly, these activities constitute many of the basic demands of unskilled work. *See* SSR 85-15, 1985 WL 5685, at *4 (SSA Jan. 1, 1985) ("The basic mental demands of . . . unskilled work include the abilities (on a sustained basis) to. . . respond appropriately to supervision, coworkers, and usual work situations;

and to deal with changes in a routine work setting. *A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability . . . .*") (emphasis added). A "marked" limitation constitutes "a substantial loss in the ability to effectively function." (T. 2599).

As previously set forth, an ALJ's conclusion need not perfectly correspond with any of the opinions of the medical sources cited in his decision, however "when an ALJ credits only portions of a medical source opinion, the ALJ must explain why other portions of the opinion were rejected." *Bleil*, 2017 WL 1214499, at *6 (citing *Raymer v. Colvin*, No. 14-CV-6009, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015)). Here, the ALJ's failure to explain why he chose not to incorporate certain limitations set forth in Dr. Asar's assessment, despite affording it "evidentiary weight" and claiming to have incorporated her findings into the RFC limitations, leaves the ALJ's decision "lacking the clarity necessary to determine whether the ALJ's findings are supported by substantial evidence." *Lawrence W. v. Comm'r of Soc. Sec.,* No. 5:17-CV-0877 (TWD), 2018 WL 4509490, at *8 (N.D.N.Y. Sept. 18, 2018) (citing *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("A court 'cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.'") (internal quotation omitted); *Booker v. Astrue*, No.

07-CV-0646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (internal citation omitted); *Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.") (quotation marks and citation omitted); *Lee v. Astrue,* No. 10-CV-6036, 2011 WL 1675101, at *7-8 (W.D.N.Y. May 4, 2011) (finding error meriting remand where the ALJ's decision was internally inconsistent)).

Furthermore, based on the evidence of record this court cannot otherwise "glean the rationale for the ALJ's decision," in find that any error by the ALJ was harmless. Although state agency expert Dr. Bruni assessed considerably less restrictive limitations with respect to, among other functions, the ability to respond appropriately to changes in the work setting and the ability to accept instruction and get along with coworkers (T. 590), the ALJ purported to rely on Dr. Bruni's non-examining opinion based on its consistency with the "longitudinal record," which necessarily included the in-depth, thorough treatment records and opinion provided by treating psychiatrist Dr. Asar.  Nevertheless, Dr. Bruni's opinion is contradicted[8] by Dr. Asar's treatment notes

---

[8]For example, Dr. Bruni's opinion that plaintiff was"not significantly limited" in mental adaption functions is not clearly reflected in Dr. Asar's treatment records, and this court cannot gauge how the ALJ interpreted Dr. Asar's treatment records as support for such an opinion.  Upon mental examination by Dr. Asar, plaintiff's impulse control was regularly noted to be "poor," with consistently "limited" to "fair" insight and judgment.  (T.  2603, 2610, 2613, 2616, 2622, 2628).  Plaintiff was consistently noted to exhibit thought process that was somewhat circumstantial and over-elaborative,

and findings in some significant ways, and the ALJ failed to provide an explanation reconciling these conflicts. Furthermore, although Dr. Bruni did not have the benefit of Dr. Asar's treatment notes and opinion, having been prepared approximately one year later, the ALJ did. In fact, Dr. Asar's treatment records and opinion were considered of such relevance that the district court previously remanded this case back to the Agency in light of the Commissioner's failure to consider them in rendering his decision. (T. 1256-68).

Other district courts within the Second Circuit have held that a marked limitation does not necessarily constitute an inability to perform work, and have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has a marked limitation in performing a work related function. *See Davis v. Comm'r of Soc. Sec.,* No. 17-CV-6804P, 2019 WL 1870814, at *3 (W.D.N.Y. Apr. 26, 2019); *see also Terri G. v. Comm'r of Soc. Sec.*, No. 3:18-CV-0066 (CFH), 2019 WL 1318074, at *9 (N.D.N.Y. Mar. 21, 2019). Here, however, considering the ALJ's reliance on a treating physician's opinion finding marked limitations in multiple functions required for unskilled work,[9] and in light of the ALJ's failure to explain how

_____

with some looseness of association. (*Id.*). Dr. Asar opined that plaintiff's prognosis was guarded. (T. 2598).

[9]The previously cited cases involved ALJ reliance on findings of a "marked" limitation with respect to interacting with others. *Davis,* 2019 WL 1870814, at *3; *Terri G.*, 2019 WL 1318074, at *7. Indeed, based on this court's review, other courts' affirmations involving a finding of a "marked" limitation appear to involve situations where an isolated function is at issue. *See Miller v. Berryhill,* No. 6:16-CV-6467, 2017 WL 4173357, at *5-6 (W.D.N.Y. 2017) (". . . [o]ther courts in this Circuit

he accounted for these limitations in formulating his ultimate RFC, we cannot conclude that the RFC in this case was supported by substantial evidence. *See Lawrence W.,* 2018 WL 4509490, at *6-9 (remanding where a finding of "not disabled" was based on a mental RFC for simple, routine, and repetitive tasks, despite the ALJ affording "great weight" to the opinion of a consultative examiner who opined that plaintiff had, among other things, marked limitations in the ability to respond to usual work situations and to changes in a routine work setting).

Because this court cannot determine the ALJ's underlying rationale, and it is not clear from the ALJ's decision why or how certain Dr. Asar's opinions were or were not adopted, despite the apparent weight afforded to his opinion, this court finds that the mental RFC is not supported by substantial evidence. Therefore, remand is recommended.

## VII. **NATURE OF REMAND**

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the

---

have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has *a* 'marked' limitation in performing *a* work related function . . .) (emphasis added); *Fiducia v. Comm'r of Soc. Sec.*, No. 1:13-CV-285, 2015 WL 4078192, at *4 (N.D.N.Y. 2015) ("[t]he fact that plaintiff was found to have a marked limitation interacting with others does not conclusively demonstrate that she is unable to work . . ."). Here, Dr. Asar found plaintiff to have a marked limitation in various functional domains, including interacting with supervisors/coworkers, responding appropriately to usual work situations, and responding appropriately to changes in a routine work setting. (T. 2600). Accordingly, the analysis as set forth in *Davis* and *Terri G.* is distinguishable from this action, where marked limitations were found in several activities constituting the basic demands of unskilled work.

evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). However, it is possible, on the current record, that the ALJ could make a proper RFC determination involving further limitations with respect to plaintiff's mental RFC that would not preclude her from performing some unskilled jobs that exist in significant numbers in the national economy. Thus, this court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). Given the extensive delays in plaintiff's administrative case to date, the court recommends that the Commissioner be directed to expedite proceedings on remand within 120 days.

WHEREFORE, based on the findings in the above Report, it is hereby

RECOMMENDED, that the decision of the Commissioner be REVERSED and this case REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d

Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: August 28, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge